**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

HESSER AUTOMOTIVE, INC., et al.,

Plaintiffs,

v.

NEWMAR CORPORATION,

Defendant.

CASE NO. 3:24-CV-608-HAB

**OPINION AND ORDER**

Plaintiffs William Hesser and Hesser Automotive, Inc. filed this suit against Defendant Newmar Corporation on July 26, 2024, alleging claims arising from Plaintiffs' purchase of a recreational vehicle from Newmar's dealer. (ECF No. 2). Plaintiffs bring state law claims for breach of express and implied warranties as well as a federal law claim for violation of the Magnuson-Moss Warranty Act (MMWA).

Before the Court is Newmar's Motion for Summary Judgment as to all claims. (ECF No. 24). The motion is fully briefed and ripe for consideration (ECF Nos. 27-28, 31-32).

## I. FACTUAL BACKGROUND[1]

Plaintiff Hesser Automotive, Inc. ("Hesser Automotive"), purchased a Newmar Ventana (the "RV") from Mount Comfort RV in Greenfield, Indiana in November 2022.[2] (Pl. SOMF ¶ 1

---

[1] Because Newmar did not provide a separate statement of material facts, the Court cites to Plaintiffs' Statement of Material Facts (ECF No. 27) and Newmar's Response to Plaintiffs' Statement of Material Facts (ECF No. 31) when reciting the facts provided by Newmar in this section of its Opinion. The Court has noted where any facts are disputed.

[2] Hesser Automotive, a car dealership owned by Plaintiff William Hesser ("Hesser"), paid the purchase price and was not reimbursed by Hesser. (ECF No 27 ¶¶ 2-3). Hesser Automotive paid the licensing fees, registered the vehicle in its name in the State of Wisconsin, and is the current named owner of the RV. (*Id.* ¶¶ 4-6).

(ECF No. 27)). The RV came with a standard Newmar Twelve Month Limited Warranty. (*Id.* ¶ 7). Hesser and his wife began noticing problems with the RV on the drive home from the purchase. (*Id.* ¶ 16). Plaintiffs contend that the following defects were ultimately presented for repair at least three times and not resolved:

- Electrical Issues (Including Blowing Fuses, Dash Beeps, Cruise Control, Door Locks / Unlocks On Own, Heated Flooring, Warning Lights / Sounds Going Off, Parking Brake Not Set But Warning Lights Going Off, Steering Warning Light and Lose Power Steering, Navigation System, Slide);
- Warning Sounds / Beeps Going Off;
- Warning Lights;
- Cruise Control;
- Heated Floor;
- Shower Water Misner Not Working (Burst of Cold Water);
- Entry Door Closure System Releases While Driving

(ECF No. 28 at 8-9).

Newmar disagrees, arguing that the record shows that none of the above defects were presented to Newmar at least three times and remain unresolved. (ECF No. 32 at 2-5).

### A. The Repairs

Plaintiffs contend that they presented the RV for repairs a total of seven times—five times to Newmar's factory service center, and twice to Truck Country Madison, a Freightliner[3] authorized dealer. The record as to these visits is not entirely clear. Plaintiffs state that they brought the RV to Newmar on February 20, 2023; May 1, 2023; June 2, 2023; July 7, 2023; and October 12, 2023. (Pl. SOMF ¶¶ 17, 23, 27, 31, 38). According to Newmar, Plaintiffs' second appointment was on May 30, 2023, not May 1, 2023. (Def. Resp. to Pl. SOMF ¶ 23 (ECF No. 31)). Newmar also contends that the RV was presented to Newmar for repairs on four occasions, not five. (*Id.* ¶ 40). Both parties cite to a series of repair orders prepared by Newmar and relating to each repair

[3] Freightliner is the RV's chassis manufacturer. (ECF No. 24 at 4).

appointment. (ECF No. 27-5). There appear to be only four repair orders associated with appointments, and not five, though five Newmar appointments are referenced by Plaintiffs throughout the briefs. (*Id.*). At each of the Newmar repair appointments—whether there were four or five—Plaintiffs contend that they presented "electrical issues" for repair, alongside a long list of other defects, which varied from appointment to appointment.[4]

Plaintiffs scheduled their first repair appointment at Newmar's factory service center for February 20, 2023. (Pl. SOMF ¶ 17). Hesser testified in his declaration that he presented a list of defects at this appointment, including multiple electrical issues. (Hesser Decl. ¶ 8 (ECF No. 27-1 ¶ 8)). Shortly thereafter, Hesser and his wife left on a trip in the RV, during which they experienced multiple problems, including a reappearance of the electrical issues they state they had presented during the February 20, 2023 service center appointment. (Pl. SOMF ¶ 19). On or about April 4, 2023, Hesser sent Newmar a letter listing 17 noted defects. (*Id.* ¶ 20). Hesser and his wife then left on another trip—and once again experienced electrical issues. (*Id.* ¶ 21).

Plaintiffs state that they then brought the RV in for a second repair appointment at Newmar's factory service center, during which Newmar acknowledged that there was an electrical issue but told Plaintiffs that the issue was a "Freightliner problem." (Pl. SOMF ¶ 24). Newmar denies acknowledging that electrical issues existed but admits that it advised that "certain issues" needed to be repaired by Freightliner. (Def. Resp. to Pl. SOMF ¶ 24). This prompted Plaintiffs to take the RV to Truck County Madison for repair of three electrical issues in May 2023. (Pl. SOMF ¶ 25). The dealer replaced a blown fuse and told Hesser that the electrical issues were "a Newmar problem." (*Id.* ¶ 26). Plaintiffs brought the RV back to the dealer for another visit associated with electrical issues, about

[4] Newmar contends that electrical issues were not raised at the first appointment. (Def. Resp. to Pl. SOMF ¶ 17). Newmar also contends that "electrical issues" as a category is not listed on the repair orders associated with June 2, 2023 or July 6, 2023 appointments, but acknowledges that the more specific defects Plaintiffs list as associated with that category were presented during those appointments. (*Id.* ¶ 27).

a month later. (*Id.* ¶ 29). The dealer again told Plaintiffs that the electrical issues were a "Newmar problem"—a message relayed to them by a Newmar technician. (*Id.* ¶ 30).

Hesser and his wife continued to take the RV on trips, and noticed electrical issues resurfacing in September 2023. (Pl. SOMF ¶¶ 35-36). In his declaration, Hesser states that when he discussed an issue with the "drivers side slide out," with Newmar, Newmar told him that it was due to an issue with the electronic control. (Hesser Decl. ¶ 19 (27-1)). Newmar denies that the "electrical issues resurfaced" and contends that "[t]here is no evidence that the slide out was connected to any prior electrical issue." (Def. Resp. to Pl. SOMF ¶ 36).

On December 26, 2023—after the seven alleged repair appointments—Hesser created a list of 56 defects that he had reported to Newmar and its authorized dealers, identifying which ones had been fixed and which had not. (Pl. SOMF ¶¶ 39-40).

Plaintiffs also retained an expert, Steven Paul ("Paul"), who inspected the RV and prepared a report during discovery. (ECF No. 27-2). Paul's report included a long list of verified defects that require further repair. (*Id.* at 4-5). Paul concluded that the RV "shows relatively low mileage but has a lengthy and complex service history, with over 30 days out of service and 7 repair events," and that the vehicle "continues to show deficiencies regarding plumbing, electrical and powertrain concerns which inhibit its intended use and function as a recreational vehicle." (*Id.* at 8).

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't*

*of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## III. ANALYSIS

The Newmar warranty provision states that "Indiana law shall apply to all agreements, disputes, negotiations, litigation and settlements." (ECF No. 24-4). Neither party disputes that Indiana law governs. *See* ECF No. 24 at 3; ECF No. 28 at 4. Newmar argues that summary judgment is warranted on all of Plaintiffs' claims. In the alternative, it argues that Hesser's potential damages should be limited, and that Hesser should be dismissed as a plaintiff. The Court will first address Plaintiffs' claims on the merits, before turning to Newmar's other arguments.

### A. Plaintiffs' Claims

#### 1. Breach of Express Warranty

Under Indiana law, to prevail on a breach of warranty claim, a plaintiff must prove four elements: "(1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages." *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019). Indiana law requires purchasers to give the warrantor a reasonable opportunity to repair the defects before bringing a breach of warranty claim. *Zylstra v. DRV, LLC*, 8 F.4th 597, 601 (7th Cir. 2021). The Seventh Circuit has held that a "reasonable opportunity" means giving the warrantor at least three opportunities to repair the defect. *Id.* at 603 (citing *Mathews*, 931 F.3d at 622). This standard does not focus on how many specific repair attempts were made, whether one or multiple per visit. Rather, the figure that matters is how many times the purchaser presented the issue for repair. *See id.* (framing the inquiry as turning on how many times a defect was presented); *Kutz v. Jayco, Inc.* 738 F. Supp. 3d 1035, 1039 (N.D. Ind. 2023) (citing *Zylstra* and conducting the same analysis). On top of the number of attempts, courts have also interpreted the reasonable opportunity to repair requirement to include a mandate that "repairs . . . be completed within a reasonable amount of time." *Id.*

Plaintiffs argue that the record demonstrates that the following defects were presented for repair at least three times and not fixed, thereby constituting a breach of Newmar's express warranty:

- Electrical Issues (Including Blowing Fuses, Dash Beeps, Cruise Control, Door Locks / Unlocks On Own, Heated Flooring, Warning Lights / Sounds Going Off, Parking Brake Not Set But Warning Lights Going Off, Steering Warning Light and Lose Power Steering, Navigation System, Slide)
- Warning Sounds / Beeps Going Off
- Warning Lights
- Cruise Control
- Heated Floor
- Shower Water Misner Not Working (Burst of Cold Water)
- Entry Door Closure System Releases While Driving

(ECF No. 28 at 8-9). Newmar disagrees, arguing that the only defects that were presented for repair at least three times are the "Heated Floor" and "Shower Water Misner Not Working (Burst of Cold Water)" defects. (ECF No. 32 at 3, 5).

Much of the debate here arises from Plaintiffs' grouping of the "electrical issues" at the top of its list of defects. In their statement of material facts, Plaintiffs contend that they presented "electrical issues" during all seven repair appointments. The specified defects listed under the broader "electrical issues" umbrella differed, however, across appointments. Additionally, some of the defects Plaintiffs list in their general "electrical issues" category are also listed further down in the list—such as "Cruise Control" and "Heated Flooring." In order to reduce confusion, the Court will first address the question of "electrical issues" generally before turning to the defects Plaintiffs claim outside of the electrical issues umbrella.

**a. Electrical Issues**

Plaintiffs contend that they raised "electrical issues," as a category, in every repair appointment. (ECF No. 28 at 7-8). Newmar disagrees, arguing that Plaintiffs impermissibly group distinct defects under the "electrical issues" umbrella. (ECF No. 32 at 2-3). For example, with respect to "Dash Beeps" and "Warning Lights / Sounds Going Off," Newmar contends that "[a]n analysis of the repair orders shows that each such beep, sound and light was in fact associated with a specific component," and argues that therefore "each beep, light and sound is subsumed in the other issues presented, and none of those other issues were the subject of three or more failed repair attempts." (*Id.* at 2).

Plaintiffs take a different view. Paul stated in his declaration that "[t]here are electrical issues in the coach that still exist and have had multiple repairs, including: lights flashing, navigation system and radio not working, warning lights going off, warning sounds going off,

blowing fuses, inverter malfunctioning, and the floor heating turning on all on its own." (Paul Decl. ¶ 9 (ECF No. 27-2)). He opines that these defects are all connected because they arise from these ongoing "electrical issues." In reply, Newmar argues that, even if there were a connection between the beeps, sounds, lights, floor heating and inverter, these defects were not presented for repairs three times each, and therefore summary judgment is warranted in their favor on any warranty claims arising out of these defects. (ECF No. 32 at 4).

The fundamental dispute between the parties here appears to be whether "electrical issues" is properly considered one defect. To the extent the defects listed in parentheses next to "electrical issues" on Plaintiff's list are symptoms of a larger electrical defect, Plaintiffs' express warranty claims arising from them should be able to proceed, as the Court concludes from a review of the repair orders that Plaintiffs have demonstrated that they presented some kind of electrical issue to Newmar at least three times (Repair Orders 738189, 764551, 805939), and concludes from Paul's report—and Newmar's lack of contradicting evidence—that electrical issues persist (Paul Rep. at 4-6). The Parties' statements of facts also indicate that Newmar was aware throughout the repair history that Plaintiffs were complaining of electrical issues with the RV. To the extent that these defects are *not* correctly considered part of a larger electrical defect, then they must be examined as distinct defects to determine whether they were presented at least three times, or whether Newmar otherwise had a reasonable opportunity to repair them.

On this record, the Court cannot definitively say which defects are part of the alleged electrical issue and which are not. For that reason, the Court denies summary judgment as to Plaintiffs' breach of warranty claim premised on "electrical issues." Which of the smaller defects properly fall under that umbrella will be a question for trial.

The Court will now address each listed defect—including those listed by Plaintiffs in the parenthetical next to electrical issues in its ultimate defect list—independently, to determine whether Newmar is correct that the reasonable opportunity to repair requirement was not met.

**b. Blowing Fuses**

According to both Plaintiffs' statement of material facts, their brief, and Hesser's declaration, Plaintiffs only presented the "Blowing Fuses" defect for repair twice, during Repairs #1 and #2. *See* ECF No. 27 at 5, 7; ECF No. 28 at 7. However, Paul's report lists "blowing fuses" alongside electrical issues as part of the same defect. (Paul Rep. at 4).

Plaintiffs have not presented any argument as to why this defect should prove an exception to the general three repairs rule. Therefore, the Court grants summary judgment in favor of Newmar on Plaintiffs' breach of express warranty claim associated with this issue, to the extent that it is not determined to be part of the broader "electrical issues" defect.

**c. Dash Beeps; Warning Lights / Sounds Going Off; Warning Sounds / Beeps Going Off**

Plaintiffs include "Dash Beeps" and "Warning Lights / Sounds Going Off" as part of the lists of defects under the "electrical issues" umbrella. (ECF No. 28 at 8-9). They also list "Warning Sounds / Beeps Going Off" and "Warning Lights" in their list separately from the electrical issues. As with the larger electrical issues defect, it is unclear to the Court whether these should ultimately be determined to be distinct defects, or whether they should be considered together. Newmar argues that "each such beep, sound and light was in fact associated with a specific component" and "subsumed in the other issues presented," none of which were the subject of three or more failed repair attempts. (ECF No. 32 at 2). In his declaration, Hesser states that some version of warning lights or sounds was presented to Newmar during his first, fourth, fifth, six, and seventh

repair appointment. Hesser Dec. ¶¶ 8, 15-17, 20. In his report, Paul describes "warning lights and sounds going off" as one single defect, listed alongside "electric issues." (Paul Rep. at 4).

The dispute over whether these defects were presented to Newmar at least three times, even if they are found not to be included within "electrical issues," is a factual one that cannot be resolved at summary judgment. The Court denies Newmar's motion as to Plaintiffs' breach of express warranty claim associated with this defect.

**d. Cruise Control**

Plaintiffs include "Cruise Control" as part of the list of defects addressed both within the "electrical issues" umbrella and outside of it. (ECF No. 28 at 8-9). Newmar argues that this issue was presented to it only once, as part of the appointment associated with Repair Order 764551. (ECF No. 32 at 2-3). Further, Newmar notes that no "Cruise Control" defect is mentioned as an outstanding issue by Plaintiffs' own expert in his declaration or report as an existing defect.[5] (*Id.* at 3).

The Court finds no evidence in the repair orders or in Paul's report that "Cruise Control," as a defect independent from other electrical issues, was presented to Newmar more than once— or that Newmar failed to fix it. Therefore, the Court grants summary judgment in favor of Newmar

---

[5] Newmar also argues that summary judgment is appropriate on breach of warranty claims associated with this defect because Paul's declaration makes no mention of it as one of the issues "connected" to the electrical issues. (ECF No. 32 at 3). The relevant paragraph of Paul's declaration states:

> 9. It is my opinion, within a reasonable degree of certainty, that there is a direct connection between the electrical issues in the coach that still exist and have had multiple repairs. These electrical defects include: lights flashing, navigation system and radio not working, warning lights going off, warning sounds going off, blowing fuses, inverter malfunctioning, and the floor heating turning on all on its own.

(ECF No. 27-2). Because Paul used the word "include," the Court does not consider this list to be an exhaustive and conclusive list of the defects associated with electrical issues, for purposes of this motion.

on Plaintiffs' breach of express warranty claim associated with this issue, to the extent that it is not determined to be part of the broader "electrical issues" defect.

**e. Door Locks / Unlocks on Own**

Plaintiffs include "Door Locks / Unlocks on Own" as part of the list of defects under the umbrella of "electrical issues" only. (ECF No. 28 at 8-9). Newmar argues that this issue was presented to it only twice, as part of the appointments associated with Repair Orders 738189 and 764551. (ECF No. 32 at 2-3). Newmar notes that it is also not present in Paul's list of items which require further repair.[6] (*Id.* at 3).

The Court finds no evidence in the repair orders or in Paul's report that "Door Locks / Unlocks on Own," as a defect independent from other electrical issues, was presented to Newmar more than twice—or that Newmar failed to fix it. Therefore, the Court grants summary judgment in favor of Newmar on Plaintiffs' breach of express warranty claim associated with this issue, to the extent that it is not determined to be part of the broader "electrical issues" defect.

**f. Heated Floor**

Plaintiffs include "Heated Floor" as part of the list of defects addressed both within the electrical issues umbrella and outside of it. (ECF No. 28 at 8-9). Newmar concedes that the issue was presented for repairs three times. (ECF No. 32 at 3). However, Newmar argues that summary judgment is warranted because Paul's expert report notes that the heated floor issue was "repaired, tested and found to be working as designed" on the third attempt. (*Id.* (citing Paul Rep. at 5)). But the Court also notes that, in the electrical issues Paul notes as still existing in his declaration, Paul includes "floor heating turning on all on its own." (Paul Decl. ¶ 9). Considering that contradiction,

---

[6] Newmar once again notes that Paul did not include this issue on his list of defects "connected" to the electrical issues. The Court finds this argument unpersuasive for the reasons explained in footnote five.

the Court finds a factual issue as to whether the issue with the heated flooring was resolved. This precludes summary judgment on Plaintiffs' breach of express warranty claim associated with this issue, regardless of whether it is determined to be part of the broader "electrical issues" defect.

**g. Parking Brake Not Set But Warning Lights Going Off**

Plaintiffs include "Parking Brake Not Set But Warning Lights Going Off" as part of the list of defects under the umbrella of "electrical issues" only. (ECF No. 28 at 8-9). Newmar argues that this defect was presented only twice, as part of the appointments associated with Repair Orders 738189 and 764551.

The Court finds no evidence in the repair orders or in Paul's report that "Parking Brake Not Set But Warning Lights Going Off," as a defect independent from other electrical issues, was presented to Newmar more than twice—or that Newmar failed to fix it. Therefore, the Court grants summary judgment in favor of Newmar on Plaintiffs' breach of express warranty claim associated with this issue, to the extent that it is not determined to be part of the broader "electrical issues" defect.

**h. Steering Warning Light and Lose Power Steering**

Plaintiffs include "Steering Warning Light and Lose Power Steering" as part of the list of defects under the umbrella of "electrical issues" only. (ECF No. 28 at 8-9). Newmar argues that this was the subject of only one repair attempt, performed by the chassis manufacturer Freightliner, and that it does not show up on any Newmar repair order. (ECF No. 32 at 3-4).

Upon review of the record, the Court finds that the only time a steering issue was presented to Newmar for repair was during Plaintiffs' first appointment—and the specific defect noted in Hesser's affidavit and in the repair order associated with the appointment was a loose bolt on a steering column. (Hesser Decl. ¶ 8; Repair Order 127555). It is unclear to the Court whether that

is related to "steering warning light and lose power steering" but, even if it is, evidence of one appointment would be insufficient to show that Newmar was given a reasonable opportunity to repair this defect.

The Court grants summary judgment in favor of Newmar on Plaintiffs' breach of express warranty claim associated with this issue, to the extent that it is not determined to be part of the broader "electrical issues" defect.

**i. Navigation System**

Plaintiffs include "Navigation System" as part of the list of defects under the umbrella of "electrical issues" only. (ECF No. 28 at 8-9). Newmar argues that this defect was only presented twice, as part of the appointments associated with Repair Orders 738189 and 764551. Newmar acknowledges that it is mentioned on Repair Order 805939, as well, but argues that this does not count because it was noted solely as a verification that it was working properly. (ECF No. 32 at 4).

Paul's report includes "navigation intermittently inoperable" as an item that requires further repair. (Paul Rep. at 4). His declaration includes "navigation system and radio not working" as part of the list of defects included as connected to electrical issues in the coach. Further, the Court does not find that the mention of the navigation system on Repair Order 805939 to mean conclusively that it was not presented as a defect at that appointment.

Therefore, the Court denies summary judgment with respect to Plaintiffs' breach express warranty claim associated with this defect.

**j. Slide**

Plaintiffs include "Slide" as part of the list of defects under the umbrella of "electrical issues" only. (ECF No. 28 at 8-9). Newmar argues that there are only two references to slide repairs

in the repair orders, and they each refer to a different slide: Repair Order 738189 notes "Kitchen Slide Out Noisy," and Repair Order 805939 notes "Driver's slide will not go out." The Court finds that Plaintiffs have presented no evidence to contradict Newmar's assertion.

The Court grants summary judgment in favor of Newmar on Plaintiffs' breach express warranty claim associated with this issue, to the extent that it is not determined to be part of the broader "electrical issues" defect.

#### k. Shower Water Misner Not Working (Burst of Cold Water)

Plaintiffs include "Shower Water Misner Not Working (Burst of Cold Water)" as a defect distinct from the "electrical issues." (ECF No. 28 at 8-9). Newmar acknowledges that this defect was presented for repair three times. (ECF No. 32 at 5). However, Newmar argues that there is no defect: "Plaintiff complains that after he runs hot water for 30 seconds, the water turns cold. Newmar admits that Plaintiff complained three times, but the system does exactly what it is designed to do. During the second repair attempt, it was tested at least 20 times (!) without a problem." (ECF No. 32 at 5 n.5). But while Newmar insists there is no existing defect with respect to the shower water misner—and cites Repair Order 738189 as testing the system 20 times and confirming no issues—Plaintiff has provided contradictory evidence in the form of Paul's testimony, which lists "water misner system not working" as a manufacturing defect that remains unrepaired. (Paul Decl. ¶ 8.c).

The Court finds, therefore, that there is a factual issue that precludes summary judgment on Plaintiffs' breach of express warranty claim associated with this defect.

#### l. Entry Door Closure System Releases While Driving

Plaintiffs include "Entry Door Closure System Releases While Driving" as a defect distinct from the "electrical issues." (ECF No. 28 at 8-9). Newmar argues that this defect was only

presented twice, as part of the appointments associated with Repair Orders 738189 and 764551. In his declaration, Hesser also only notes this defect as associated with two repairs.

Therefore, the Court grants summary judgment in favor of Newmar on Plaintiffs' breach express warranty claim associated with this defect.

**2. Breach of Implied Warranty**

"[A] warranty that goods shall be merchantable is implied in *all* sales contracts if the seller is a merchant with respect to goods of that kind." *Frantz v. Cantrell*, 711 N.E.2d 856, 859 (Ind. Ct. App. 1999). That warranty extends to manufacturers as well. *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005). To be merchantable, goods must pass without objection in the trade and be fit for the ordinary purpose for which such goods are used. Ind. Code § 26-1-2-314(2).

Plaintiffs' breach of implied warranty claim is based on their contention that the RV is not—and has never been—fit for recreational use. (ECF No. 28 at 10-12); *see also* Paul Decl. (ECF No. 27-2). According to Paul, the RV's "substantial defects" demonstrate that it "was not merchantable and not fit for its ordinary use at the time of delivery of the RV to Mr. Hesser." (Paul Decl. ¶ 12).

In its initial motion for summary judgment, Newmar does not directly address Plaintiffs' breach of implied warranty claim.[7] In its reply, Newmar addresses only Plaintiffs' contention that "any chassis defects would be included for consideration in regards to Plaintiffs' implied warranty claim"—contending that Plaintiffs have identified no chassis issues that were subject to three or

[7] Arguments not raised in an opening brief are considered waived. *Dye v. United States*, 360 F.3d 744, 751 n.7 (7th Cir. 2004). But while Newmar did not directly address the breach of implied warranty claim in its motion, the Court interprets Newmar's argument that it was not given a reasonable opportunity to repair Plaintiffs' defects to apply to both Plaintiffs' express and implied warranty claims, as both claims rely on the same legal analysis. *See Zylstra*, 8 F.4th at 609.

more repair attempts. (ECF No. 32 at 5). The Court agrees and grants summary judgment in favor of Newmar to the extent that Plaintiffs' claim for breach of implied warranty is premised on any chassis defects.

Because Plaintiffs have provided expert testimony to support their claim for breach of implied warranty, and because the Court finds that summary judgment was not warranted on their breach of express warranty claim, the Court denies summary judgment on Plaintiffs' breach of implied warranty claim. *See Zylstra*, 8 F.4th at 609 (stating that the legal standard—that the buyer must grant the warrantor a reasonable opportunity to cure any alleged defect—is the same with respect to breach of express and implied warranty claims, under Indiana law).

### 3. Magnuson-Moss Warranty Act

Newmar also moves for summary judgment on Plaintiffs' claims brought pursuant to the federal Magnuson-Moss Warranty Act ("MMWA"). The MMWA "does not provide an independent basis for liability; it only provides for federal jurisdiction for some state claims[.]" *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). A claim under the MMWA rises and falls with the state law claims. *Id.* As set forth above, the Court denied summary judgment on the express warranty claim and the implied warranty claim. Therefore, Newmar's motion for summary judgment on Plaintiffs' MMWA claim is also denied.

## B. Additional Arguments

In addition to its arguments that Plaintiffs' claims for breach of express and implied warranty cannot survive their motion for summary judgment, Newmar also argues that (1) incidental and consequential damages are not recoverable, and (2) Plaintiff Hesser has no cause of action and must be dismissed as a plaintiff.

As a threshold matter, Plaintiffs argue that these arguments, as presented in Newmar's motion, are "extremely conclusory and underdeveloped, and as such are waived." (ECF No. 28 at 12). They argue that any attempt by Newmar to supplement these arguments in its reply brief should not be considered. (*Id.*).

It is true that Newmar's development of these arguments in its initial motion is virtually nonexistent. Newmar devotes three sentences and one case citation to its argument on incidental and consequential damages, and a meager one sentence and one case citation to its argument on dismissing Hesser. *See* ECF No. 32 at 6-7. Plaintiffs are correct that conclusory and underdeveloped arguments are waived. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). They are also correct that arguments first raised in a reply brief are also waived. *See Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012). However, in its reply brief, Newmar only expands on the arguments it introduced in its initial motion—it does not raise new ones. The additional support for its arguments Newmar includes in its reply brief is sufficient to convince the Court to consider its arguments as to incidental and consequential damages, as well as the dismissal of Hesser as an individual plaintiff, on their merits.

### 1. Incidental and Consequential Damages

Newmar argues that the incidental and consequential damages Plaintiffs seek are not recoverable under the contract.[8] The warranty provides:

> NEWMAR CORPORATION WILL NOT BE RESPONSIBLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING (BUT NOT LIMITED TO) LOSS OF USE OF VEHICLE, LOSS OF TIME, INCONVENIENCE, EXPENSES FOR TRAVEL, LODGING, TELEPHONE,

[8] Newmar also argues that revocation, Plaintiffs' "alternate prayer for relief," is precluded because Newmar was the remote manufacturer and not the seller. *(*ECF No. 24 (citing *Skodras v. Gulf Stream Coach, Inc.* 2010 WL 145370 (N.D. Ind. 2010)). In response, Plaintiffs state that they "do not oppose Defendant's motion in relation to the prayer for relief seeking revocation against Newmar." (ECF No. 28 at 16). Therefore, the Court need not address this argument.

> TRANSPORATION CHARGES, LOSS OR DAMAGES TO PERSONAL PROPERTY, OR LOSS OF INCOME.

(ECF No. 24-4). As support for its argument that this warranty language prohibits this kind of recovery, Newmar states that "[t]he same language was enforced to preclude recovery of incidental and consequential damages in *Castagna v. Newmar Corp.*, 340 F. Supp. 3d 728, 742-44 (N.D. Ind. 2018). (ECF No. 24 at 6). But, as Plaintiffs note, in *Castagna*, the court did not enforce the language to preclude recovery of incidental and consequential damages. Rather, the court found a genuine dispute as to whether the plaintiff had been aware of the damages limitation at the time of purchase, as the plaintiff stated in his affidavit that he did not receive the warranty—and was not aware of its terms—until after he purchased the vehicle. 340 F. Supp. 3d at 744. For that reason, the court found a genuine dispute of material fact as to whether the limitation provision was enforceable and denied summary judgment on the enforceability of the damages limitation. *Id.*

Plaintiffs argue that the same logic applies here, as—similar to the plaintiff in *Castagna*—Hesser has stated in his declaration that he did not see the Newmar Warranty until after he purchased the RV, the warranty terms were never discussed with him, and he was not aware of the limitations provision at the time of purchase. (ECF No. 28 at 14-15).

The Court disagrees. To begin with, Plaintiffs acknowledged in writing that they received the warranty prior to purchase. (ECF No. 31-2) (box labeled "Reviewed Warranty and agreed to terms prior to purchase" is checked on the warranty confirmation form signed by Hesser on November 29, 2022, the date of purchase). During his deposition, Hesser stated that he did not dispute having signed the document, although he also stated he did not recall doing so. (ECF No. at 21:9-22:5).

Additionally, Plaintiffs' claims demonstrate both that they were aware of the warranty provisions and that they took advantage of them by bringing the RV in for repairs as well as by

bringing an action for breach of the express warranty, which leads the Court to find that summary judgment in favor of Newmar is warranted on this issue. *See Mathews*, 931 F.3d 619. In *Mathews*, plaintiffs argued that a warranty's limitations were unenforceable in part because plaintiffs did not receive a copy of the warranty at the time of purchase. *Id.* at 623. The District Court found the limitations provision enforceable because plaintiffs "were aware of the [warranty] and its terms, and even took advantage of it by having repair work done at [defendant's] factory[.]" *Id.* The Seventh Circuit agreed, stating that the plaintiffs "[could not] have it both ways: relying on the contract when it works to their advantage to get repairs done and then alleging that it is unconscionable when it doesn't." *Id.* The Court finds that this reasoning applies to the situation at hand—because Plaintiffs took advantage of some of the warranty provisions, they cannot now argue that others should not apply to them.

The Court grants Newmar's motion with respect to Plaintiffs' claim for incidental and consequential damages.

**2. Plaintiff William Hesser**

Newmar argues that Plaintiff William Hesser must be dismissed as a Plaintiff because he does not qualify as a "buyer" under Indiana law or a "consumer" under the MMWA. *See* ECF No. 24 at 7; ECF No. 32 at 8. Indiana law governing warranties defines a buyer as "a person who buys or contracts to buy goods." Ind. Code § 26-1-2-103. It defines a "sale" as the "passing of title" for a price. Ind. Code § 26-1-2-106. The MMWA defines a "consumer" as:

> a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

15 U.S.C. § 2301(3).

Newmar argues that, because Hesser Automotive received the RV's title at the time of purchase, and maintains it, Hesser is not a buyer pursuant to Indiana law and may not bring claims for breach of warranty. (ECF No. 32 at 8). To support this argument, Newmar cites *Andersen v. Thor Motor Coach, Inc.*, in which a different court in this District dismissed claims brought by individuals where the RV had been purchased by an LLC and not the individual plaintiffs. *Andersen*, 402 F. Supp. 3d 467, 474-75 (N.D. Ind. 2019).

In response, Plaintiffs argue that Hesser is a proper plaintiff who qualifies both as a "buyer" under the Indiana UCC and a "consumer" under the MMWA. (ECF No. 28 at 15). Plaintiffs' support for this argument is that, "as the owner, and 75% shareholder with 100% voting ownership of the S-Corporation, Mr. Hesser paid for the RV and will be individually taxed for any benefits he received through the dealership's ownership." (*Id.*) Plaintiffs distinguish *Andersen* by noting that, in *Andersen*, the RV was purchased by an LLC and financed by the LLC, whereas here, Hesser purchased the RV through his S-Corporation.

The Court is unpersuaded. Plaintiffs have not only failed to provide case law to support their contention that purchase through an S-Corporation would have different effects on a plaintiff's status as a buyer or consumer than purchase through an LLC, but have also failed to explain the argument. In *Andersen*, one of the plaintiff's argued that he should qualify as a buyer because the RV was purchased for his personal use, and because he was the sole member of the purchasing LLC. *Andersen*, 402 F. Supp. 3d at 475. The court dismissed this argument, explaining that "[t]hese circumstances, even if true, are not on point. They are facts unrelated to the statutory definition and do not yield the conclusion that the [plaintiffs]" met either relevant definition. *Id.* The Court finds the same to be true here, and grants Newmar's motion as to Hesser's claims.

## IV. CONCLUSION

For the foregoing reasons, Newmar's Motion for Summary Judgment (ECF No. 24) is GRANTED in part and DENIED in part. The Court:

(1) DENIES the motion with respect to:
  a. Plaintiffs' claim for breach of express warranty, except as specified in the opinion;
  b. Plaintiffs' claim for breach of implied warranty, except as specified in the opinion; and
  c. Plaintiffs' claim pursuant to the Magnuson Moss Warranty Act;

(2) GRANTS the motion with respect to:
  a. Plaintiffs' claim for incidental and consequential damages; and
  b. William Hesser's claims; and

(3) DISMISSES William Hesser as a Plaintiff in this action.

**SO ORDERED** this 30th day of September 2026.

s/Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT